MICHAEL J. RATHBUN *vs.* WESTERN MASSACHUSETTS
ELECTRIC COMPANY
(and a companion case[1]).

Berkshire.    March 6, 1985. — July 10, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Indemnity. Negligence,* Electric company. *Joint Tortfeasors.*

In a proceeding for indemnification, following settlement of tort actions
arising out of an accident in which a dump truck, while being unloaded,
came in contact with a utility company's high voltage electric transmis-
sion line at a city-owned landfill over which the city had granted the
utility an easement, the judge's finding that the utility was negligent in
causing the plaintiffs' injuries by permitting the dumping, and by failing
to take any steps to protect persons using the landfill or to warn them
of the hazard was not clearly erroneous. [363]

A city's deed, granting a utility company an easement to maintain a high
voltage electric transmission line over the city's landfill, contained no
language from which could be implied an obligation by the city to
indemnify the utility for the amount of settlements it paid to two plaintiffs
whose injuries were found to have resulted from the negligence of both
the city and the utility. [363]

No principle of common law entitled a utility company to indemnification
from the city which had granted it an easement to maintain its high
voltage electric transmission line over the city's landfill, where injuries
to two plaintiffs, to whom the utility paid a settlement, were found to
have resulted from the negligence of both the city and the utility and
where the utility's negligence was direct, rather than vicarious. [363-365]

CIVIL ACTIONS commenced in the Superior Court on June
23, 1978.

---

[1] The other action is Michael A. Sciola *vs.* Western Massachusetts Electric
Company (WMEC). In each action WMEC impleaded the city of Pittsfield
as a third-party defendant. In the same plaintiffs' actions against the city,
it similarly impleaded WMEC.

The cases were tried before *John F. Moriarty,* J., and a proceeding as to contribution or indemnification was heard by him.

The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

The cases were submitted on briefs.

*David O. Burbank & Frederick M. Myers* for the defendant.

· *Paul S. Weinberg & James M. Rabbitt* for the city of Pittsfield.

WILKINS, J. On June 2, 1977, Michael J. Rathbun and his grandfather, Michael A. Sciola, were seriously injured when the body of the dump truck they were unloading came in contact with a high voltage electric transmission line of the Western Massachusetts Electric Company (WMEC) at the city of Pittsfield's landfill. The city had granted WMEC an easement for the transmission line in 1960. In March, 1983, tort actions brought by Rathbun and Sciola against the city and WMEC were settled in the midst of trial, with WMEC and the city contributing equally to the settlement.

These consolidated appeals concern the question whether the city must indemnify WMEC for the amounts WMEC paid in settlement of the tort claims. In the course of the settlement of the tort actions, the defendants agreed to submit their respective third-party claims to the trial judge for decision on the basis of the evidence he had heard at the trial, together with stipulations of the parties. The judge decided each third-party action in favor of the third-party defendant. Only WMEC appealed. We transferred WMEC's appeals here on our own motion. We affirm the judgments.

The trial judge found that WMEC was negligent in causing the plaintiffs' injuries "by permitting the filling and dumping and by failing to take any steps to protect persons using the land fill or to warn them of the hazard." Because the city was also negligent, the judge concluded that the defendants were joint tortfeasors, each of which should be responsible for one-half of the amount of the settlements. See G. L. c. 231B (1984 ed.). He further concluded that each defendant was independently negligent. He denied indemnity to WMEC.

1. The judge's finding of WMEC's negligence was not clearly erroneous as a matter of fact (Mass. R. Civ. P. 52 [a], 365 Mass. 816 [1974], *Freyermuth* v. *Lutfy,* 376 Mass. 612, 615 [1978]) and recognized the high duty of care placed on persons transmitting electricity (*Gelinas* v. *New England Power Co.,* 359 Mass. 119, 124 [1971]). WMEC had no exclusive use of the land and was bound to anticipate that the land would be used by others. *Royal Indem Co.* v. *Pittsfield Elec Co.,* 293 Mass. 4, 6 (1935). Under the easement deed, WMEC had control over the land in many aspects (including the right to construct "protecting facilities and other equipment or appurtenances") and WMEC retained total control over the transmission lines, the instrumentality that caused the injuries. WMEC's argument that the city had exclusive control over the premises fails as a matter of fact.[2]

2. There is no merit to WMEC's argument that an agreement by the city to indemnify it should be implied from the language of the city's deed granting WMEC its easement. There is no language from which an implied obligation to indemnify WMEC could arise in the circumstances of this case. The general rule is that there must be express language creating an obligation to indemnify one against his own negligence. See *Great Atl. & Pac. Tea Co.* v. *Yanofsky,* 380 Mass. 326, 334 (1980). Cf. *Monadnock Display Fireworks, Inc.* v. *Andover,* 388 Mass. 153, 158 (1983). As these cases show, an indemnity obligation may be implied under a contract in favor of a non-negligent party to that contract who reasonably settled the claim of a third party.

3. WMEC argues that it is entitled to indemnity from the city on common law principles. It contends that, even if it was itself negligent (a conclusion we have said the judge was justified in reaching), the nature of its negligence in relation to the nature of the city's negligence entitles WMEC to indemnity under the decisions of this court. The relevant principles are

---

[2] We need not decide whether, if the city had exclusive control of the premises, that fact would be legally significant. See *Great Atl. & Pac. Tea Co.* v. *Yanofsky,* 380 Mass. 326, 329-330 (1980) (landlord and tenant).

set forth in *Decker* v. *Black & Decker Mfg. Co.,* 389 Mass. 35, 40-41 (1983); *Afienko* v. *Harvard Club,* 365 Mass. 320, 336 (1974); *Ford* v. *Flaherty,* 364 Mass. 382, 385-386 (1973); *Stewart* v. *Roy Bros.,* 358 Mass. 446, 458-460 (1970); *Gray* v. *Boston Gas Light Co.,* 114 Mass. 149, 154 (1873).

The general rule is that a person who negligently causes injury to a third person is not entitled to indemnification from another person who also negligently caused that injury. Indemnification has been permitted, however, where the person seeking indemnification did not join in the negligent act of another but was exposed to liability because of that negligent act. Sometimes the successful indemnitee in such a situation is said to have been only "constructively" rather than "actually" negligent or to have been "derivatively" or "vicariously" liable rather than "directly" liable. These are distinctions that characterize the result in a case but hardly assist in reaching that result. Only in exceptional cases, however, has indemnity been allowed to one who was not free from fault. See *Ford* v. *Flaherty, supra* at 385-386.

The number of instances in which this court has allowed indemnity to a negligent indemnitee is small.[3] See *Hollywood Barbecue Co.* v. *Morse,* 314 Mass. 368, 369-370 (1943); *Boston Woven Hose & Rubber Co.* v. *Kendall,* 178 Mass. 232, 236-237 (1901); *Gray* v. *Boston Gas Light Co., supra.* Probably no instructive general rule can be stated as to when indemnity will or will not be allowed to a negligent person. See W. Prosser & W. Keeton, Torts § 51, at 343-344 (5th ed. 1984). In those cases in which indemnity has been allowed to a negligent indemnitee, the indemnitee's negligence has been insignificant in relation to that of the indemnitor. In the *Hollywood Barbecue Co.* case, *supra* at 370, for example, the

---

[3] There is a line of cases, in which the standard seems to have been somewhat more relaxed in favor of indemnity, involving allowance of indemnification to a municipality aware of a defect in a public way (or similar hazard) created by the defendant. See, e.g., *Holyoke* v. *Hadley Co.,* 174 Mass. 424, 427 (1899); *Lowell* v. *Boston & Lowell R.R.,* 23 Pick. 24, 34 (1839).

court said that "it is not altogether clear how the present plaintiff could have been held liable to [the injured third party] in the former action." Certainly, in no such case has the person successfully seeking indemnification been one held to the special level of care of a company transmitting electricity. WMEC is not entitled to indemnity on the principles established by our cases.[4]

*Judgments affirmed.*

---

[4] Future relief for a tort defendant not entitled to indemnity but less negligent than another defendant might be achieved by amending the contribution act (G. L. c. 231B) to be responsive to relative degrees of fault among tort defendants. See *Zeller* v. *Cantu, ante* 76, 83 (1985). An adjustment of common law indemnity principles to place all the loss on the more negligent of two tortfeasors would not be an improvement, and for us to lay down a common law rule of indemnification based on relative fault (an action WMEC has not asked us to take) would seem to intrude on the apportionment rule of the contribution statute (see *id.* at 82-83).