# Fraco Products, Ltd., & another[1] vs. Bostonian Masonry Corporation.

No. 12-P-933.

Suffolk. May 6, 2013. - September 26, 2013.

Present: Kantrowitz, Katzmann, & Rubin, JJ.

*Negligence,* Construction work, Scaffolding, Manufacturer, Vicarious liability, Joint tortfeasor. *Indemnity. Workers' Compensation Act,* Exclusivity provision. *Joint Tortfeasors. Contract,* Indemnity.

In a civil action arising from a construction accident involving a platform that was designed, manufactured, and sold by the third-party plaintiff, a Superior Court judge properly granted summary judgment against the plaintiff on its common-law indemnification claim against the defendant employer of the decedent, where the exclusivity provision in the workers' compensation statute, G. L. c. 152, § 23, ordinarily bars a third party sued by the employee from recovering against the negligent employer who has paid workers' compensation, and there was no evidence that the relationship between the plaintiff and the defendant was a special one carrying with it an obligation to indemnify third parties [299-304]; and where the plaintiff was not entitled to such indemnification under a "differing degree of fault" theory [304-306].

In a civil action arising from a construction accident involving a platform, a Superior Court judge properly granted summary judgment for the defendant employer of the decedent on the third-party contractual indemnification claim of the plaintiff designer, manufacturer, and seller of the platform, where the contract did not expressly, plainly, clearly, and unequivocally provide that the the defendant would indemnify the plaintiff. [306-307]

Civil action commenced in the Superior Court Department on April 11, 2006.

The case was heard by *Nancy Holtz,* J., on a motion for partial summary judgment.

*James E. Carroll* for the plaintiffs.

*Robert R. Pierce* for the defendant.

Katzmann, J. This appeal arises from a construction accident

---

[1]Fraco Products, Inc.

and involves a dispute over indemnification.[2] The primary issue on appeal is whether the trial judge properly granted summary judgment against Fraco Products, Ltd., and Fraco Products, Inc. (collectively, Fraco), on their third-party complaint seeking indemnification from Bostonian Masonry Corporation (Bostonian) on a theory of common-law indemnity, where Bostonian had paid workers' compensation benefits to the estate of its employee, the plaintiff in the underlying suit.[3] We affirm.

*Background.* Fraco is a designer, manufacturer, and seller of industrial mast-climbing platforms used in construction. The mast-climbing platforms are used instead of scaffolding. They are long platforms that are hydraulically lifted up (or lowered down) a mast extending up the side of a structure. Construction workers, such as masons, stand on the platforms to install materials, such as stone and windows. On April 8, 2004, Fraco sold Bostonian six platforms, including the mast-climbing platform (Machine No. 10) at issue in this construction accident, for $225,710. Bostonian paid an initial amount upon delivery and then paid the remainder in five monthly installments. The terms and conditions of the contract provided the following language as to the right of ownership:

> "Right of Ownership — Under this Agreement, the SELLER [Fraco] shall remain and shall continue to remain the owner of the Equipment sold to the BUYER [Bostonian], the Parties agreeing that the ownership shall not be transferred neither [*sic*] at the drafting stage of the Agreement, nor upon delivery of the Equipment, but only after all sums due, as stated in each and every invoice to be issued by the SELLER, will have been paid in full to the SELLER."

The terms and conditions of the sales contract also included

---

[2]The appellants, Fraco Products, Ltd., and Fraco Products, Inc. (collectively, Fraco), were defendants and third-party plaintiffs in the underlying suit. The appellee, Bostonian Masonry Corporation (Bostonian), was named as a defendant in Fraco's third-party complaint. The named plaintiffs in the underlying suit, administrators of the estate of Romildo Campos DaSilva, who was one of the victims in the accident, are not party to this appeal.

[3]We also address briefly Fraco's argument that it was entitled to indemnification from Bostonian based on the language of the sales contract for the equipment that failed in the accident.

provisions as to risk of loss and indemnification. See part 3, *infra.* In the project at issue, Bostonian worked as the masonry subcontractor to George B.H. Macomber Company, the general contractor, during the construction of a dormitory building at Emerson College. In April of 2006, Bostonian was using eleven Fraco mast-climbing platforms to install a limestone exterior on the dormitory. On April 3, 2006, Bostonian employees were dismantling Machine No. 10 when it collapsed onto Boylston Street, killing a passerby as well as two construction workers, including Romildo Campos DaSilva, a Bostonian employee.

On April 11, 2006, DaSilva's estate filed suit against Fraco, as well as other defendants.[4] The estate alleged that Fraco was negligent in the design, manufacture, installation, service, and inspection of Machine No. 10. The estate did not name Bostonian as a defendant, presumably because Bostonian had paid workers' compensation benefits covering DaSilva. See G. L. c. 152, § 23.[5] Consequently, Fraco filed a third-party complaint against Bostonian seeking (i) contribution and (ii) indemnification on theories of contractual and common-law indemnity.

On February 5, 2009, Bostonian moved for summary judgment on Fraco's third-party claims. The Superior Court judge originally assigned to the case held oral argument and allowed Bostonian's motion for summary judgment as to Fraco's contribution claims.[6] As to the indemnification claims, the judge deferred judgment. On March 31, 2010, shortly before trial was to begin, Bostonian filed a renewed motion for partial summary judgment as to Fraco's indemnification claims. On April 6, 2010, a different Superior Court judge (trial judge) heard oral argument on these issues. The court recessed after hearing argu-

---

[4]A number of other plaintiffs also filed suit, alleging various types of damage from the accident; the cases were consolidated and have since settled.

[5]"If an employee files any claim or accepts payment of compensation on account of personal injury under this chapter, or submits to a proceeding before the department under sections ten to twelve, inclusive, such action shall constitute a release to the insurer of all claims or demands at common law, if any, arising from the injury. If an employee accepts payment of compensation under this chapter on account of personal injury or makes an agreement under section forty-eight, such action shall constitute a release to the insured of all claims or demands at common law, if any, arising from the injury." G. L. c. 152, § 23, as amended through St. 1985, c. 572, § 34.

[6]Fraco has not appealed from this ruling.

ment, and returned the same day with a ruling, granting summary judgment in Bostonian's favor on Fraco's common-law and contractual indemnity claims. The judge explained her reasoning in the following margin entry: "Upon further argument and further review of papers and case law, this motion is *allowed* for reasons argued . . . ." After several days of trial, DaSilva's estate and Fraco settled the estate's remaining claims before the case reached the jury. Final judgment entered on February 3, 2011. Fraco now appeals from so much of the judgment as dismissed its common-law and contractual indemnification claims against Bostonian.[7]

*Discussion.* 1. *Standard of review.* On appeal, we review the motion judge's grant of summary judgment de novo. *Dennis* v. *Kaskel,* 79 Mass. App. Ct. 736, 740 (2011). We undertake the following evaluation:

> "[We] determine whether, on the basis of the affidavits submitted by the parties, summary judgment was properly granted. Pursuant to Mass.R.Civ.P. 56(c) . . . , only if . . . there is no genuine issue as to any material fact [is] . . . the moving party . . . entitled to a judgment as a matter of law. [A]ll doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment.
>
> "In considering a motion for summary judgment, the court does not pass upon the credibility of witnesses or the weight of the evidence [or] make [its] own decision of facts. [T]he moving party must affirmatively show that there is no real issue of fact, all doubts being resolved against the party moving for summary judgment."

*Shawmut Worcester County Bank, N.A.* v. *Miller,* 398 Mass. 273, 281 (1986) (internal citations omitted).

2. *Common-law indemnity.* Fraco provided Machine No. 10, and Fraco employees helped to install it at the worksite. It is

---

[7]Fraco Products, Inc., is a Georgia corporation. Pursuant to the parties' contract, we apply Georgia law to the contractual indemnity claim. Since the tort-based common-law indemnity claim is not a contract claim, it is not subject to the parties' choice of Georgia law to govern contract disputes. As such, Massachusetts law applies to the common-law indemnity claim.

undisputed that only Bostonian employees were engaged in the dismantling of Machine No. 10 when the accident occurred. As we have noted, in the underlying suit, the plaintiff estate alleged that Fraco was negligent in the design, manufacture, installation, service, and inspection of Machine No. 10. Fraco advances two arguments as to why Bostonian could be found to owe Fraco common-law indemnification.

a. While denying any negligence on its part, Fraco contends that if it was in fact liable, its liability was derivative or vicarious of Bostonian's liability; Bostonian, not Fraco, dismantled Machine No. 10, and a Bostonian employee directed the removal of the anchor tie that led to the collapse of the mast-climbing platform and the death of the plaintiffs' decedent. In short, Fraco contends that if this case were to proceed to trial, the evidence would show that it played at most a de minimis role in erecting Machine No. 10 at the construction site and that Bostonian was liable for the accident. Ultimately, Fraco argues that this question of liability is an issue of fact that requires a jury trial and that is not amenable to resolution at summary judgment. We disagree.

The exclusivity provision in the workers' compensation statute, G. L. c. 152, § 23 (see note 5, *supra*), "ordinarily bars a third party sued by the employee from recovering against the negligent employer who has paid workers' compensation." *Larkin* v. *Ralph O. Porter, Inc.*, 405 Mass. 179, 181 (1989). In *Liberty Mut. Ins. Co.* v. *Westerlind*, 374 Mass. 524 (1978), a case where the defendant attempted to implead an employer which, like Bostonian, had paid workers' compensation benefits to the employee's estate, the Supreme Judicial Court observed, "The majority position is that a third-party tortfeasor may recover indemnity from an employer only if the employer had expressly or impliedly contracted to indemnify the third party or if the employer and the third party stand in a relationship that carries with it the obligation to indemnify the third party." *Id.* at 526. Setting aside, for the moment, the language in *Westerlind* allowing for contractual indemnity, see part 3, *infra*, we focus on the court's statement that a relationship between two parties may give rise to third-party common-law indemnification. The Supreme Judicial Court has provided guidance as to the scope of the relation-

ship exception identified in *Westerlind* that allows for common-law indemnification.

In *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. 35 (1983), the plaintiff, an employee injured in a workplace accident, sued the manufacturer and supplier of the equipment involved in the accident. The court held that the relationship between a product manufacturer/supplier and the purchaser is not a relationship that typically gives rise to third-party common-law indemnification. *Id.* at 39-41. Prior to bringing suit, the plaintiff had received double compensation from his employer pursuant to the workers' compensation statute, upon a finding that the employer had engaged in "serious and wilful misconduct." The plaintiff's complaint against the manufacturer alleged negligent manufacture, negligent failure to warn, and negligent failure to correct defects in the equipment. As to the supplier, the plaintiff alleged negligent failure to inspect, negligent failure to warn, and breach of express and implied warranties. *Id.* at 36. The defendants filed a third-party complaint against the employer, asserting, as here, that a "special relationship" giving rise to indemnification from the employer arose because they "did not join in the act of negligence which caused the plaintiff's injury." *Id.* at 40. The Supreme Judicial Court rejected the argument. The court first noted that "[t]his right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another." *Id.* at 40. The court then went on to explain that, under the facts of the case, the defendants could not satisfy this requirement: either the defendants would be liable because of their own negligent acts (and hence their liability would not be derivative of the employer's negligence), or, if as the defendants asserted, they were not negligent at all, that would constitute an "absolute defense" to the underlying action, but "[s]uch a defense . . . does not provide the basis for an indemnity claim." *Id.* at 41, citing cases, and noting, "As in . . . *Westerlind*, . . . we base our decision on the statutory scheme embodied in G. L. c. 152."

In *Larkin* v. *Ralph O. Porter, Inc.*, 405 Mass. at 185, the Supreme Judicial Court held that the relationship between a general contractor and a subcontractor is not a relationship that typically gives rise to third-party common-law indemnification.

In *Larkin*, after recovering workers' compensation pursuant to G. L. c. 152, § 23, from their employer (the subcontractor), the plaintiff employees brought suit against the general contractor. *Id.* at 180. The general contractor then filed a third-party complaint against the subcontractor requesting indemnification. *Ibid.* The subcontractor moved for summary judgment, arguing that the payment of workers' compensation constituted a bar to additional recovery; the motion was allowed. *Ibid.* On appeal, the Supreme Judicial Court affirmed the decision of the motion judge and provided the following explanation for its holding:

> "[T]he relationship between [the parties] militates against a conclusion that a right of indemnity exists. . . . In *Vertentes* v. *Barletta Co.*, 392 Mass. 165 [, 168-169, 171] (1984), we specifically held that a general contractor could not be held vicariously liable to the employee of its sub-contractor when that employee is injured because of an act or omission of the subcontractor. . . . We reached this conclusion in part because, if we were to impose such liability, general contractors who employ subcontractors 'may demand indemnity from those contractors for any recovery obtained by the contractor's employees. This would expose independent contractors to potential liability far greater than that of other employers covered by workmen's compensation statutes.' "

*Id.* at 185.

In the suit underlying the case at bar, DaSilva's estate alleged that Fraco, the manufacturer of the scaffolding, was independently liable — not vicariously or derivatively liable for the wrongful acts of Bostonian, DaSilva's employer. Thus, this case presents the paradigm where the plaintiff's injuries could be attributed both to the manufacturer of a product used by the plaintiff's employer in the construction process and to the negligence of the employer in the use of the product — for which the employer was immune from direct suit by the employee. In the present litigation, Fraco, the product manufacturer, seeks to shift its own liability to Bostonian, the employer; this — as *Decker*, *supra*, and *Larkin*, *supra*, instruct — it cannot do. "[T]here is no evidence that the relationship between [Fraco and Bostonian] is a special relationship carrying with it an obligation to indem-

nify the third parties." *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. at 39, citing *Liberty Mut. Ins. Co.* v. *Westerlind*, 374 Mass. at 527. Fraco cannot maintain a common-law third-party indemnification action against Bostonian on the grounds that Bostonian hired, or directed, Fraco employees, or that Bostonian misused the product (Machine No. 10) that it purchased from Fraco. See *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. at 41.[8]

We note in passing that the Supreme Judicial Court has long been aware of the criticism surrounding the potential availability of common-law indemnification in cases involving workers' compensation and that the court has looked to the Legislature for guidance in resolving this issue. In 1978, in *Liberty Mut. Ins. Co.* v. *Westerlind*, 374 Mass. at 527, the court commented, "We . . . note that strong policy arguments exist on both sides of the issue whether a third party should have a right of recovery on the basis of contribution or indemnification. . . . Such conflicting policy considerations are best resolved in the Legislature where the resolution can be based on full consideration of the competing interests and the ramifications involved with any change of the legislative scheme of G. L. c. 152." In 1989, the court observed in *Larkin* v. *Ralph O. Porter, Inc.*, 405 Mass. at 186 n.4, "In 1985 and 1986, the Legislature substantially revised the statutory scheme of workers' compensation. Nevertheless, the

---

[8]Fraco also argues that if its employees were working under the direction and control of Bostonian when they helped install Machine No. 10, any negligence on their part must be ascribed to Bostonian under the "borrowed servant" doctrine. See, e.g., *Ledbetter* v. *M.B. Foster Elec. Co.*, 357 Mass. 780, 780 (1970) (where plaintiff brought suit against defendant whose employees were lent to another entity at time of their alleged negligence, verdict must be directed for defendant). This theory apparently presupposes that any liability on Fraco's part could be associated only with its employees' participation in the installation of Machine No. 10, and not with Fraco's independent work as the designer and manufacturer of the equipment. *Decker*, *supra* at 41, disposes of Fraco's arguments. Even if Fraco were to establish that its only liability related to the installation of the equipment, and that its employees were "borrowed servants" of Bostonian when participating in the installation of Machine No. 10, this would amount to the "absolute defense" posited in *Decker*, but, pursuant to the holding of *Decker*, would not entitle Fraco to indemnification from Bostonian. Similarly, as discussed in *Decker*, any negligence on the part of Fraco in its capacity as manufacturer and designer of the equipment would take it out of the category of derivative or vicarious liability, again precluding indemnification. See *ibid.*

Legislature left intact the exclusivity provision of the workers' compensation law, providing no exception in cases where a defendant sued by an employee seeks indemnification over against the negligent employer."

b. Citing *Rathbun* v. *Western Mass. Elec. Co.*, 395 Mass. 361 (1985), Fraco argues in the alternative that further fact finding is necessary because if its own negligence (if any) were determined to be de minimis as compared to that of Bostonian, Fraco would be entitled to common-law indemnification under a "differing degree of fault" theory. In *Rathbun*, the Supreme Judicial Court noted that in rare exceptions, indemnification has been allowed to a joint tortfeasor. The court stated:

> "The general rule is that a person who negligently causes injury to a third person is not entitled to indemnification from another person who also negligently caused that injury. Indemnification has been permitted, however, where the person seeking indemnification did not join in the negligent act of another but was exposed to liability because of that negligent act. Sometimes the successful indemnitee in such a situation is said to have been only 'constructively' rather than 'actually' negligent or to have been 'derivatively' or 'vicariously' liable rather than 'directly' liable. These are distinctions that characterize the result in a case but hardly assist in reaching that result. *Only in exceptional cases, however, has indemnity been allowed to one who was not free from fault*" (emphasis added).

*Id.* at 364. The *Rathbun* court further stated that even though "[p]robably no instructive general rule can be stated as to when indemnity will or will not be allowed to a negligent person . . . [i]n those cases in which indemnity has been allowed to a negligent indemnitee, the indemnitee's negligence has been insignificant in relation to that of the indemnitor." *Ibid.* See *Economy Engr. Co.* v. *Commonwealth*, 413 Mass. 791, 794 (1992) ("[in] rare cases . . . the fault of one joint tortfeasor . . . [may be] so slight as to grant it rights of indemnity against another joint tortfeasor").

Fraco contends that under the aforementioned language in *Rathbun*, Fraco would be entitled to common-law indemnification from Bostonian if Fraco's fault is relatively insignificant in

relation to that of Bostonian. Even assuming the continuing vitality of the differing degree of fault theory — an assumption which can be fairly questioned — we are unpersuaded by Fraco's argument. Although the Supreme Judicial Court has adverted to the differing degree of fault theory in two modern decisions, see *Rathbun, supra* and *Economy Engr. Co.* v. *Commonwealth, supra,* in neither case was indemnification allowed. Moreover, a review of the cases cited in *Rathbun* reveals only one case, more than a century ago — before the existence of statutory contribution and workers' compensation — in which the court allowed indemnification to one of two joint tortfeasors based on differing degrees of fault. See *Boston Woven Hose & Rubber Co.* v. *Kendall,* 178 Mass. 232, 236-237 (1901).[9] Further, as the court indicated in *Rathbun,* indemnification between joint tortfeasors based on relative fault would seem functionally indistinguishable from contribution based on degree of fault, an approach the Legislature expressly precluded in G. L. c. 231B, § 2(*a*). See *Rathbun,* 395 Mass. at 365 n.4 ("for us to lay down a common law rule of indemnification based on relative fault . . . would seem to intrude on the apportionment rule of the contribution statute"). See also *Zeller* v. *Cantu,* 395 Mass. 76, 81-83 (1985). Similarly, allowing for recovery based on differing degrees of fault in cases where, as here, the third-party defendant-employer has already paid workers' compensation (a circumstance not considered in *Rathbun* or *Economy Engr. Co.*) would conflict

---

[9]In *Boston Woven Hose & Rubber Co.* v. *Kendall, supra,* the Supreme Judicial Court upheld a verdict awarding the plaintiff-employer indemnification from the defendant-manufacturer for the amount the employer had been required to pay its injured employees, where the machine causing the injuries was defective, and, in reliance on the manufacturer's expertise, the employer had failed to inspect the machine. Compare *Stewart* v. *Roy Bros.,* 358 Mass. 446, 457, 459 (1970) (in case rejecting indemnification based on defendant's theory that third-party defendant committed "active" negligence while defendant committed only "passive" negligence, Supreme Judicial Court stated: "Indemnity is permitted only when one does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another. In such cases the court has held that plaintiffs in the indemnity actions had no participation in the negligence of the defendants"); *Decker* v. *Black & Decker Mfg. Co.,* 389 Mass. at 40 (same); *Fireside Motors, Inc.* v. *Nissan Motors Corp.* 395 Mass. 366, 369 (1985) (same). Compare also *Ford* v. *Flaherty,* 364 Mass. 382, 385-386 (1973) (same); *Afienko* v. *Harvard Club of Boston,* 365 Mass. 320, 336 (1974) (same).

with the policy behind the exclusivity provision of the workers' compensation statute, G. L. c. 152, § 23. Accordingly, the trial judge correctly entered summary judgment on behalf of Bostonian, denying Fraco's request for common-law indemnification.

3. *Contractual indemnity.* Fraco contends that under the plain language of the sales contract, Bostonian was required to provide Fraco with indemnification. Fraco argues that the judge committed error in entering summary judgment for Bostonian because the judge could not have reasonably construed the language of the sales agreement in a manner that would have exempted Bostonian from indemnifying Fraco. We disagree.

In the terms and conditions of the sales contract, the parties included the following provisions as to risk of loss and indemnification:

> "Transfer of Risks and Insurance — The BUYER hereby assumes entire risk of loss to the Equipment upon its reception. The BUYER assumes all the risks and obligations of an absolute owner and commits to indemnify and guarantee the Seller for all loss or claims for damage caused to or by the Equipment. . . .

> "Indemnification by the BUYER — The BUYER does not hold the SELLER responsible for loss, claims, fees, expenses, damage-interest, suits and responsibilities, injuries, death, including judicial fees, related to this Agreement, the Equipment, the acquisition, the ownership, the use as well as the exploitation of the Equipment or arising from such. This indemnification will survive the expiration of this Agreement."

Under Georgia law, unless an indemnity contract "expressly, plainly, clearly, and unequivocally" states that the negligence of the indemnitee is covered, the indemnitor does not incur an obligation to indemnify the indemnitee for its loss. *Park Pride Atlanta, Inc.* v. *City of Atlanta*, 246 Ga. App. 689, 691 (2000). See *Service Merchandise Co.* v. *Hunter Fan Co.*, 274 Ga. App. 290, 296 (2005). Courts are to construe the language of an indemnification contract strictly against the party seeking indemnification. See *id.* at 292.

The terms of the sales contract for Machine No. 10 do not

create any clear or discernible indemnity obligation between Bostonian and Fraco. The provision entitled "Indemnification by the BUYER" does not outline an affirmative obligation on the part of either party to provide indemnification. Rather, the contract language provides that Bostonian agrees that it will not hold Fraco liable for any damages resulting from the purchased machine.

With respect to the "Transfer of Risks and Insurance" provision, we note that this provision, unlike the "Indemnification by the BUYER" provision, is not followed by a survival clause. Given that the contract terminated by its own terms when Bostonian made the final installment payment (sometime before the accident), the "Transfer of Risks and Insurance" provision is not relevant here.

In sum, because the contract does not "expressly, plainly, clearly, and unequivocally" provide that Bostonian will indemnify Fraco, the Superior Court judge properly entered summary judgment for Bostonian on Fraco's contractual indemnification claim. See *Park Pride Atlanta, Inc.* v. *City of Atlanta,* 246 Ga. App. at 691.

*Conclusion.* There was no error in the allowance of Bostonian's motion for summary judgment on Fraco's common-law and contractual indemnification claims.

*Judgment affirmed.*