FALL RIVER HOUSING AUTHORITY *vs.* H. V. COLLINS
COMPANY; CAPE COD LATH & PLASTER, INC., third-party
defendant.

Suffolk. November 3, 1992. - December 23, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Contract*, Subcontract, Indemnity. *Indemnity. Limitations, Statute of.*

Neither the provisions of the contract between the general contractor and
one of the subcontractors on a construction project, nor the circum-
stances of the relationship between the parties, gave rise to any implied
contractual right of indemnity requiring the subcontractor to indemnify
the general contractor for repair work required after the project was
completed; consequently, the general contractor's third-party claim
against the subcontractor was one for simple breach of contract and
was barred by the applicable six-year statute of limitations, G. L. c.
260, § 2. [14-17]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 16, 1988.

A third-party claim, filed on April 27, 1988, was heard by
*Elizabeth B. Donovan*, J., on a motion for summary
judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Paul W. Goodale* of Rhode Island, for H. V. Collins
Company.

*Peter J. Gagne* for Cape Cod Lath & Plaster, Inc.

NOLAN, J. Once again we must work our way through the
brambles surrounding the right to indemnity at common law.
In this case, there are two issues: (1) whether there is an
implied right of indemnification arising from the terms of a
subcontract between the general contractor and the subcon-
tractor; and (2) if the right exists in this case, when does an

action based on implied contractual indemnity accrue? We hold that there is no implied contractual indemnity in this case, and, consequently, we do not reach the second issue.

This case began on March 16, 1988, by a complaint founded on a contract dispute between the Fall River Housing Authority (Fall River) and H.V. Collins Company (Collins), the general contractor on a housing development for the elderly. On April 27, 1988, Collins filed a third-party complaint against Cape Cod Lath & Plaster, Inc. (Cape Cod), a subcontractor on the development, for contribution and indemnification of any payments which Collins might have to make to Fall River. On April 9, 1990, the Superior Court judge granted Cape Cod's motion for summary judgment on the third-party claim and subsequently denied Collins' motion for reconsideration on September 25, 1990. The judge ruled that Collins' claim against Cape Cod was barred by the statute of limitations,[1] and judgment was entered on February 5, 1991, dismissing Collins' third-party complaint as well as all remaining parties and claims in the case. However, when Collins turned to Fall River and moved for summary judgment on the ground that Fall River's claims against Collins were likewise time barred, a different judge in the Superior Court denied Collins' motion. The judge held that Fall River's claim against Collins, in contrast to Collins' third-party claim against Cape Cod, was not barred by the statute of limitations.[2] In reaching her decision, the judge

---

[1]General Laws c. 260, § 2 (1990 ed.), reads: "Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, except actions limited by section one or actions upon judgments or decrees of courts of record of the United States or of this or of any other state of the United States, shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues." The three-year statute of repose for tort actions, G. L. c. 260, § 2B (1990 ed.), does not apply to contract actions. *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 822 (1986).

[2]The judge ruled that Fall River's cause of action against Collins did not accrue until Fall River accepted the construction project on March 22, 1982, rather than in October of 1981 when the project was substantially completed. Since Fall River filed its complaint on March 16, 1988, its claim was not barred by the six-year statute of limitations.

ruled that the previous decision was not controlling on the action between Fall River and Collins because it was based upon the subcontract between Collins and Cape Cod to which Fall River was not a party. Collins then settled with Fall River, and judgment was entered against Collins for $85,000 on November 15, 1990. Collins appeals only from the grant of summary judgment to Cape Cod on the third-party claim.[3]

"An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992), citing *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). In the present case, no material facts are in dispute, and, therefore, we review only whether Collins may maintain a claim against Cape Cod for implied contractual indemnity as a matter of law. The judge ruled that Collins' claim against Cape Cod accrued at the time Cape Cod allegedly breached its subcontract with Collins. Therefore, since Cape Cod's work was completed no later than October 31, 1981, and yet the complaint against Cape Cod was not filed until April of 1988, the judge ruled that Collins' claim against Cape Cod was barred by the six-year statute of limitations. We affirm.

In contrast to the procedural history, the facts of this case are quite straightforward. On October 9, 1980, Fall River contracted with Collins for the construction of a low-income elderly housing project. Collins then subcontracted with Cape Cod to install a synthetic stucco wall system manufactured by Dryvit System, Inc. (Dryvit). Cape Cod's work was finished by October, 1981; the work was certified as complete in November, 1981, and the subcontractors were paid the same month. The entire project was certified as substantially complete on March 22, 1982, and accepted by Fall River on

---

[3]At oral argument Collins abandoned its claim for contribution. The only question before the court now is whether Cape Cod must indemnify Collins for Collins' payment to Fall River.

414 Mass. 10                                                  13

Fall River Housing Authority *v.* H. V. Collins Co.; Cape Cod Lath & Plaster, Inc.

November 11, 1983. Not until March of 1987 were any defects found in the exterior wall system. At that time an inspector discovered that water had penetrated the walls and damaged the insulation. In March, 1988, nearly six years after the project was certified complete, Fall River sued Collins, Collins' insurer, and Dryvit to recover the costs of removing and reinstalling the wall system and repairing all other damage caused by the leakage.

The subcontract between Collins and Cape Cod provides that Cape Cod will indemnify Collins for claims, damages, and expenses arising out of Cape Cod's negligent performance. The parties agree, however, that this provision does not apply to their situation. The subcontract also states that "[s]uch obligation shall not be construed to . . . reduce any other right or obligation of indemnity which would otherwise exist as to any party . . . ." We have held that indemnity provisions will be construed "fairly and reasonably . . . to ascertain the intention of the parties and to effectuate their purpose." *Whittle* v. *Pagani Bros. Constr. Co.*, 383 Mass. 796, 798 (1981), citing *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 221-223 (1981), and cases cited. Collins contends that this provision preserves an *implied* right of contractual indemnity; we disagree.

When there is an *express* agreement of indemnity in a contract, a claim for indemnity accrues when there is a breach of that provision. See *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 130 (1956) (formal indemnity bond creates independent contract right to recovery).[4] For example, in this case if a person were injured due to Cape Cod's negligence, then a breach of contract would occur when Collins pays damages to the injured person because Cape Cod expressly agreed to pay such damages. Consequently, a claim against Cape Cod for contractual indemnity would accrue from the time the indemnity provision was

---

[4]The holding in *Ryan* was superseded by statute, see *Larkin* v. *Ralph O. Porter, Inc.*, 405 Mass. 179, 183 n.4 (1989), but the description of the right to contractual indemnity remains accurate.

breached. Compare *Peterson* v. *Abbe*, 234 Mass. 467, 469-470 (1920) (express indemnity contract creates surety relationship so that indemnity claim accrues from failure of defendant principal to indemnify plaintiff surety), with *Nutter* v. *Mroczka*, 303 Mass. 343, 346 (1939) (indemnity claim accrues when payment violates express contract provision, but absent express indemnity clause, claim based only on breach of contract to pay mortgage). See Black's Law Dictionary 1442, Suretyship, Contract of (6th ed. 1990) (surety has indemnification claim against principal based on surety contract).

Lacking an express indemnity provision applicable to the facts of this case, Collins asks this court to find an *implied* right of contractual indemnity so that an equitable resolution may be reached. A contractual right to indemnity arises from the relationship between the parties. *Araujo* v. *Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.*, 693 F.2d 1, 2 (1st Cir. 1982). We shall recognize an implied right to contractual indemnity only when there are "special factors" surrounding the contractual relationship which indicate an intention by one party to indemnify another in a particular situation. See *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. 35, 38-39 (1983) (citing as persuasive *Araujo, supra* at 2-3). For example, we held that a contractual agreement by a town to provide police protection at a fireworks display implies an agreement by the town to indemnify the fireworks company for damages paid to a spectator who came too near the display and was injured. *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 156 (1983). Where a lessor agreed to make all outside repairs on a particular property, we construed the agreement as implying an obligation on the lessor to indemnify the lessee for damages arising from the failure to make the promised repairs. *Great Atl. & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 331-332 (1980). In contrast, there is nothing in the contract or in the relationship between the parties in this case which compels us to find a right of implied contractual indemnity. Cf. *New Bedford Gas & Edison Light Co.* v. *Maritime Terminal, Inc.*, 380 Mass.

414 Mass. 10                                    15

Fall River Housing Authority *v.* H. V. Collins Co.; Cape Cod Lath & Plaster, Inc.

734 (1980) (nothing in contract or relationship between parties to imply obligation to indemnify against liability for personal injury); *Decker, supra* at 38-40. The provision to which Collins refers is too vague to give evidence of an intent by Cape Cod to indemnify Collins for the repair work required in this case. Indeed, the express idemnity provision limits Cape Cod's willingness to indemnify Collins only for costs arising from its negligence.

Moreover, this is not a case as in strict suretyship where both parties are liable for the same obligation, and equity relocates the burden from the party who is secondarily liable to the party who is primarily liable. See Restatement of Restitution §§ 76 et seq. (1937). Here, there is no privity between Cape Cod and Fall River.[5] Rather, there are two separate contracts: one between the owner and the general contractor, and another between the general contractor and the subcontractor. Collins, therefore, has mischaracterized its situation. As the Superior Court judge recognized correctly, this is not a case of contractual indemnity but rather a simple breach of contract.[6] Therefore, we decline to write into the subcontract an indemnity provision not bargained for by the parties. As we noted in the context of tort-based indemnity, "[s]uch a radical departure from the reasonable expectation of the parties, considering their relationship, is unwarranted in the absence of a clear expression in the contract." *New Bedford Gas & Edison Light Co., supra* at 736.

---

[5]The boiler plate references to the development's "Owner" in paragraph 11.11 of the subcontract are insufficient to establish privity between Fall River and Cape Cod.

[6]We have held that "[a] plaintiff may not, of course, escape the consequences of a statute of repose or statute of limitations on tort actions merely by labelling the claim as contractual. The court must look to the 'gist of the action.'" *Anthony's Pier Four, supra* at 823, quoting *Hendrickson v. Sears*, 365 Mass. 83, 85 (1974). Similarly, in this case Collins attempts to mask a time-barred breach of contract claim with a label of contractual indemnity. Close scrutiny of the "gist of the action" reveals that the true nature of his claim is breach of contract, and, therefore, the statute of limitations began to run from the time of the breach.

At the heart of either implied or express contractual indemnity is the breach of an underlying contractual obligation. In *Monadnock, supra* at 158 n.2, the breach occurred when the town failed to provide protection. The breach in performance in this case occurred when Cape Cod failed to install adequately the Dryvit exterior wall system. Without an express indemnity agreement covering these circumstances, Collins' cause of action accrues from the date of the breach of the contract, which the judge ruled to have occurred in October, 1981. The statute of limitations runs from the date the cause of action accrues. G. L. c. 260, § 2. Collins, therefore, had six years, starting in October, 1981, when Cape Cod allegedly violated the subcontract, to file a complaint. Because the complaint was not filed until April, 1988, we hold that Collins is barred from asserting any contract claims against Cape Cod arising from the 1980 subcontract.

In so holding, we do not deprive Collins of its rights in the subcontract or at common law. Collins had six years to bring a claim for breach of contract against Cape Cod.[7] Our decision comports with the Legislature's intent to prohibit contract claims made more than six years after the cause of action accrues. G. L. c. 260, § 2. Because the judge found that the defects were not inherently unknowable, Collins cannot claim a lack of notice. If Collins truly could not have known about the defective performance, the discovery rule would operate to toll the statute of limitations, and thereby preserve Collins' contract rights. See, e.g., *Melrose Hous. Auth.* v. *New Hampshire Ins. Co.*, 402 Mass. 27, 32 (1988). Lastly, policy considerations do not compel us to hold otherwise. Our decision promotes bargaining for express indemnity provisions, and should provide an incentive for a general contractor to monitor more diligently a subcontractor's work.

In summary, there is no implied contractual indemnity in this case. We hold that Collins' cause of action against Cape

---

[7]Damages in such an action could have been based on repair costs resulting from defective performance of the subcontractor. See, e.g., *DiMare* v. *Capaldi*, 336 Mass. 497, 501-502 (1957).

Cod accrued the moment Cape Cod violated its subcontract with Collins, and, consequently, the claim is now barred by the statute of limitations.

*Judgment affirmed.*