Brassard, J.
Plaintiff, Withhold Wilhelm (“Mr. Wilhelm”) brought this action alleging that defendants Mark J. Bruno (“Mr. Bruno”) and Bonnie & Clyde Contracting Company (“Bonnie & Clyde”)[3] failed to equip a heavy piece of equipment, the “Wood Hog,” with appropriate lighting and marking for safe night driving, and that this failure was the cause of an automobile collision. Bonnie & Clyde has filed third-party claims for contribution and indemnification against third-party defendants, Morbark of New England (“METCO”) and E-Z Wood Hog, Inc. (“E-Z”), claiming that it was their duty to assure that the Wood Hog was equipped with appropriate lighting and marking. Third-party defendants, METCO and E-Z, now move for summary judgment contending that the third-party claims are barred as a matter of law because the Federal Highway Administration’s (“FHWA”) regulations relieve these parties from responsibility to equip the Wood Hog with proper lighting and marking. The third-party defendants also urge that because they have settled with Wilhelm, G.L.c.231B, §4 relieves METCO and E-Z from any claim for contribution. Finally, METCO and E-Z contend that there are no facts which give rise to common law indemnification. For the reasons set forth below, third-party defendants’ motions for summary judgment are ALLOWED.
BACKGROUND
Viewing the facts in the light most favorable to the nonmoving parties, Bonnie & Clyde and Mr. Bruno, the undisputed facts are as follows.
On October 8, 1996 at 4:50 pm, on Salem Street in Reading, Massachusetts, Mr. Wilhelm sustained injuries when he collided with a Bonnie & Clark truck driven by Mr. Bruno, a Bonnie & Clyde employee. The truck was towing a large Wood Hog tree stump grinder. Mr. Wilhelm’s vehicle struck the rear of the stump grinder which was being towed by the truck driven by Mr. Bruno. At the time of the accident, both vehicles were traveling in the same direction on Salem Street.
Mr. Wilhelm filed a complaint against Bonnie and Clyde and Mr. Bruno alleging negligence. On April 24, *626 1998, Bonnie & Clyde and Mr. Bruno served a third-party complaint on METCO and E-Z, claiming that because E-Z manufactured the tree stump grinder and METCO sold the tree stump grinder, they were liable under a theory of contribution or indemnification. On August 10, 1998, Mr. Wilhelm signed a “Release and Settlement of Claim” which, in return for $2,000.00, discharged METCO and E-Z from “any and all claims, demands, rights, actions or causes of action” arising out of the October 8, 1996 accident.
DISCUSSION
Summary judgment shall be granted where there are no issues of material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
I. Contribution
Pursuant to G.L.c. 23IB, §1, where two or more persons are jointly liable in tort for the same injuiy to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them. However, when a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort for the same injury, it shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor. G.L.c. 23IB, §4(b). Although the statute neither defines “good faith” nor describes the burden of the party seeking to be discharged on the basis of a settlement, the purpose of the statute provides some guidance regarding this issue. Noyes v. Raymond, 28 Mass.App.Ct. 186, 188 (1990).
Massachusetts courts have stated that G.L.c. 231, §4 was intended to encourage settlements. Noyes, supra at 189; see Bishop v. Klein, 380 Mass. 285, 293-94 (1980); Robertson v. McCarte, 13 Mass.App.Ct. 441, 444 (1982). Moreover, the fact that the Legislature specified that the settlement be made in “good faith” indicates its concern with the avoidance of collusion, fraud, and other wrongful conduct. Noyes, supra. The goal of encouraging settlement will be met only if motions for discharge based upon settlement are routinely allowed, with extended hearings to determine whether such settlements are in “good faith” constituting the exception. Id. Otherwise the purpose of the statute would be compromised, as the issue of “good faith” would become the subject of a full trial or a defendant who settles with a plaintiff could nevertheless be subject to a trial on the merits of the tort claim. Id. at 190.
In this case, Mr. Wilhelm has entered into a settlement and release with E-Z and METCO. The settlement amount was $2,000. Plaintiffs medical expenses were $40,740 and his lost wages were $24,407 (Joint Pre-Trial Memorandum, p. 2). The fact that the amount of a settlement is low relative to the plaintiffs estimate of his own damages is not, in and of itself, material. Noyes, supraat 190. There are many reasons aside from “bad faith” to explain a low settlement. A low settlement may reflect uncertainty about whether the settling party would be found liable, uncertainty about whether the damages could be proven, or the general unpredictability of juries on both liability and damage issues. Id. Accordingly, given the multitude of reasons for a low settlement, a rule which determines “good faith” based only on the amount of the settlement would “require trial courts to apply an unworkable standard to every settlement. It [would] clog our trial courts with unnecessary hearings, discourage the settlement of legitimate claims, and severely strain the resources of the parties and the trial and appellate courts of this state.” Noyes, supra quoting Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal.3rd 488, 502 (1985).[4]
Mr. Wilhelm admittedly made a tactical decision to settle with METCO and E-Z because of his belief that their presence at trial would confuse the jury and distract from the evidence.[5] To avoid these problems, the plaintiff believed that he could ultimately obtain a better result by settling with METCO and E-Z. This strategy, although planned and concurred in by the third-pariy defendants, does not constitute collusion, fraud, dishonesty, or other wrongful conduct. See Noyes, supra. Given the facts presented to this court, it is reasonable that Mr. Wilhelm would settle with METCO and E-Z for a relatively nominal amount in light of Mr. Wilhelm’s belief that these third-parly defendants were not responsible for his injury.[6] Accordingly, Mr. Wilhelm’s settlement with METCO and E-Z, although they are parties whom he did not name as defendants, was not made in bad faith. Therefore, pursuant to G.L.c. 231, §4 , Bonnie & Clyde and Bruno’s claim for contribution against METCO and E-Z must fail as a matter of law.
II. Indemnification
Mr. Wilhelm’s theories of liability against Bonnie & Clyde and Mr. Bruno consist of negligent operation of the truck towing the stump grinder and failure to properly light the stump grinder. The defendants clearly do not seek indemnity if they are found liable for negligent operation of the truck because any negligence on their part would preclude tort based indemnity. See Slocum v. Donahue, 44 Mass.App.Ct. 937, 939 (1998). Bonnie & Clyde and Mr. Bruno allege that *627 if they are found liable to Mr. Wilhelm based upon the claim that the stump grinder was not properly lit, such liability is derivative or vicarious resulting solely from the act or omissions of METCO and E-Z. Thus, Bonnie & Clyde and Mr. Bruno contend that they are entitled to seek indemnity from METCO and E-Z. For the following reasons, this court disagrees.
In Massachusetts, the following three sets of circumstances give rise to indemnification: (1) an express agreement: (2) a contractual right implied from the nature of the relationship between the parties; and (3) a tort-based right. Araujo v. Woods Hole, Martha's Vineyard, etc., 693 F. 2d 1, 2 (1st Cir. 1982); see Fall River Housing Authority v. HV Collins, 414 Mass. 10 (1992); H.P. Hood & Sons, Inc. v. Ford Motor Co., 370 Mass. 69 (1976); Stewart v. Roy Bros., 358 Mass. 446 (1970). Clearly, the first two circumstances are inapplicable to this case. There was no express indemnification agreement between Bonnie & Clyde and Mr. Bruno and METCO and E-Z. Moreover, a contractual right to indemnity will only be implied when there are unique special factors demonstrating that the parties intended that the would be indemnitor bear the ultimate responsibility for the plaintiffs safety, or where there is a generally recognized special relationship between the parties. Araujo, supra at 2-3. An examination of the summary judgment record does not support the conclusion that the parties intended that E-Z or METCO take responsibility for plaintiffs safety nor that there is a special relationship between the third-party plaintiffs and the third-party defendants.[7]
Tort based indemnity exists independently of whether there is a statute or whether contractual relations exist between the parties. Fireside Motors, Inc. v. Nissan Motor Corp. IN U.S.A., 395 Mass. 366, 370 (1985). This principle allows someone who is without fault, but compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorneys fees. Slocum, supra quoting Elias v. Unisys Corp., 410 Mass. 479, 482 (1991). Indemnity is permitted only when the individual or entity seeking indemnity is not at all responsible for the negligent act. Slocum, supra; Fireside, supra at 369; Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 40 (1983). This right to indemnity is limited to those cases in which the would be indemnitee is held derivatively or vicariously liable for the wrongful act of another, and is therefore only passively negligent. Fireside, supra; Decker, supra; Araujo, supra.
The parties differ as to whether the defendants or the third-party defendants were responsible for properly lighting the Wood Hog pursuant to FHWA regulations. If Bonnie & Clyde and Mr. Bruno did have the duty to assure that the lighting on the Wood Hog met federal standards, they will be liable if the court finds that they failed to meet this responsibility and that this failure caused Mr. Wilhelm’s injuries. However, because indemnity is permitted only when the individual or entity seeking indemnity is not at all responsible for the negligent act, Bonnie & Clyde and Mr. Bruno would not be entitled to indemnity from either METCO or E-Z under this scenario. Slocum supra; Fireside, supra at 369; Decker, supra at 40.
On the other hand, even if Bonnie & Clyde and Mr. Bruno are correct in their assertions that METCO and E-Z were responsible for assuring that the Wood Hog was equipped with appropriate lighting, indemnification is nonetheless inappropriate. A defendant may serve a third-party complaint upon a person who is or may be liable to him for all or part of the plaintiffs claim against him Mass.R.Civ.P. 14(a) (emphasis added). Rule 14, like Federal Rule 14 and G.L.c. 231, §4B, does not permit a third-party complaint for the purpose of “tendering” the correct defendant. Mass.R.Civ.P. 14 Reporters’ notes. If the plaintiff has not chosen to sue the prospective third-party defendant, the defendant may bring in the third-party defendant only if the third-party defendant is or may be liable to the original defendant. Id. (emphasis added).
In this case, the defendants do not assert, within the meaning of the case law, that they may be derivatively liable for the acts of the third-party defendants. See Decker, supra citing Hollywood Barbecue Co. v. Morse, 314 Mass. 368, 370 (where one party is liable by inference of law and did not join in the negligent act, that party may recover indemnity from the party who was negligent); Gray v. Boston Lighting Co., 114 Mass. 149, 154 (1873) (a party who was liable to plaintiff by inference of law, and not by reason of personal fault, may recover indemnification from party whose wrongful acts thus exposed him to liability); Lowell v. Boston & Lowell R.R. Corp., 23 Pick. 24, 34 (1839) (a party whose negligence “was rather constructive than actual” may recover indemnification from one whose wrongdoing thus exposed the party to liability). Rather, the defendants only claim is that the negligence of the third-party defendants caused the injury to the plaintiff. The defendants may defend against the claim of the plaintiff on that basis; however, they may not bring a third-party claim on such a basis. Mass.R.Civ.P. 14 Reporters’ note.
ORDER
For the foregoing reasons, it is hereby ORDERED the third-party defendants’ motions for summary judgment are ALLOWED.

Mr. Bruno is an employee of Bonnie & Clyde and was driving the truck when the accident occurred.

 California law construing the definition of “good faith" settlements has been explicitly rejected by the Massachusetts courts. California courts adopted a definition of “good faith” which requires the court to make a decision based on many *628 factors, one of which being whether the amount of the settlement is within a reasonable range of the settling tortfeasor’s proportional share of comparative liability. California law relating to contribution differs from Massachusetts law because Massachusetts has not adopted apportionment of codefendants’ liability on the basis of relative degrees of fault. Noyes, supra at n. 7.

At the Summary Judgment hearing, Mr. Wilhelm argued that under the applicable Federal Regulations, 49 C.F.R. 393.17(b)(1) & (b)(2), Bonnie & Clyde, the carrier, and not METCO and E-Z, the manufacturer and seller, are responsible for complying with all lighting requirements and therefore, METCO and E-Z would not be liable for plaintiffs injury.

In Slocum v. Donahue, the Massachusetts Appeals Court held that plaintiffs settlement with Ford, a third-party defendant, was not made in “bad faith” where plaintiff believed that Ford was not responsible for the death of his son.

In fact, the warranty to Bonnie & Clyde says that the seller shall have “no liability to the purchaser for consequential damages of any kind whatsoever including but not limited to personal injury, property damage ... or other economic injuiy due to any defect in the product” and that the seller “shall have no liability to the purchaser directly or by way of subrogation or indemnity in tort or otherwise for any negligent design or manufacture of the product, for the omission of any warning therefrom, or for other liability arising under any other doctrine or law of product liability” (Back of Sales Invoice from METCO to Bonnie & Clyde).

 Third-Party Defendants.