McEvoy, J.
Plaintiff Henkeis & McCoy, Inc. (Henk-eis) brought this action against defendant, Boston and Maine Corporation (B&M) to recover for contributions made by Henkeis toward the settlement of a claim. Both parties have moved for summary judgment. For the following reasons, the plaintiffs motion for summary judgment is ALLOWED and the defendant’s motion for summary judgment is DENIED.
BACKGROUND
This case arises out of an automobile-pedestrian accident that occurred on January 13, 1988, in which Lilian Woodward was struck and injured by an employee of B&M, who was operating a motor vehicle leased to B&M by Henkeis. Henkeis had automobile coverage with Liberty Mutual Insurance Company (Liberty Mutual) in effect on the date of the Woodward accident, which coverage applied to the vehicle involved in the accident.
On and before January 13, 1988, the date of the Woodward accident, B&M leased certain vehicles owned by Henkeis. Henkeis sent a letter to B&M on May 27, 1986, which provided as follows:
Conditions now exist that make it necessary to confirm in writing the understanding, verified by consistent past practice, that Boston & Maine Corporation protects Henkeis & McCoy, Inc., from liability arising from third party claims involving vehicles leased from Henkeis and McCoy by Boston & Maine.
Acceptance of the above statements can be made by signing and returning this letter along with an insurance certificate listing Henkeis & McCoy, Inc. as an additional insured.[1]
Richard E. Long, treasurer of B&M at the time, contacted Roehrs and Company, Inc. and requested them to issue a certificate of insurance to Henkeis confirming that Henkeis was an additional insured on B&M’s automobile policy with Reliance Insurance Company.[2] A certificate of insurance was issued by Roehrs and sent to Henkeis dated June 5, 1986 certifying that Henkeis was an additional insured on the Reliance policy with respect to leased vehicles. Prior to the expiration of the policy with Reliance on March 1, 1987, Long contacted Roehrs and instructed them to renew the policy with the same coverage and terms as the expiring policy.
An action was brought by Ms. Woodward in this court against Henkeis, B&M and Howard Gramby, the B&M employee operating the motor vehicle, for personal injuries arising out of the accident. On June 23, 1989, Reliance settled the Woodward case on behalf of all three defendants. Reliance then brought an action in federal court seeking a declaration that Liberty Mutual’s policy provided primary coverage for all three defendants and sought indemnification in the amount *499 of the settlement plus costs. That court issued a decision that Liberty Mutual, as the policy issued to Henkels, owner of the vehicle, was primary and the Reliance policy issued to B&M, was excess. As the Woodward settlement was within the limits of the Liberty policy, Liberty was ordered to indemnify Reliance.[3] Neither Henkels nor B&M were made parties to the action, and both parties agree that it did not appear from the decision that Judge Young was informed that Henkels was an additional insured on the Reliance policy. The question before this Court is whether the language in the May 27, 1986 letter between Henkels and B&M can be construed as an indemnity provision and in particular, whether B&M is required to pay damages to Henkels for its $250,000 payment towards the Woodward settlement.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, therefore, the moving party is entitled to judgment as a matter of law. Pederson v. Time Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
The party opposing summary judgment must adequately bring any factual disputes to the attention of the trial judge. Dupont v. Dracut, 41 Mass.App.Ct. 293, 297 (1996), citing Berry v. Dawes, 34 Mass.App.Ct. 506, 508 n.3 (1993). These disputed facts must be supported by affidavits or other documents. Mass.R.Civ.R 56; see also Dupont v. Dracut, supra at 297. “(B]are assertions and conclusions regarding [an individual’s] understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Environmental Services. (N.J.), Inc., 416 Mass. 684, 696 (1993).
Interpretation of a written contract, including a contract for indemnity, is a question of law appropriately resolved upon a motion for summary judgment. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992); Speers v. H.P. Hood, 22 Mass.App.Ct. 598 (1986). The contract should be construed with reference to the situation of the parties when they made it and the obligation sought to b.e accomplished. Shea v. Bay State Gas Co., 383 Mass. 218, 223 (1981). Every contract carries with it an implied obligation of good faith and fair dealing which requires that neither party do anything that will destroy the other’s right to receive the fruits of the contract. Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404 (1995); Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451 (1991).
Both Henkels and B&M move for summary judgment and assert that, there being no dispute as to the material facts, the only issue for this court to consider is whether the agreement in the letter from Henkels to B&M constituted an agreement on the part of B&M to indemnify Henkels in the specified circumstances. To resolve this issue, the Court must apply the law of contractual indemnity to the agreement letter in light of all the credible evidence.
INDEMNIFICATION
Three different sets of circumstances may give rise to a right to indemnification. Arauju v. Woods Hole, Martha’s Vineyard, Nantucket S.S. Authority, 693 F.2d 1, 2 (1st Cir. 1982). Two of these theories are contract-based: (1) an express indemnification clause as expressed in a written contractual agreement, and (2) implied liability, shown when there are special factors present that demonstrate the parties’ intent to create a right of indemnification in a contract. Id. A right to indemnification exists as well at common law when a party is held vicariously liable for the negligent acts of another. Id. Indemnity allows someone who is without fault, and compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorneyfees. Santos v. Chrysler, 430 Mass. 198, 217 (1999), quoting Elias v. Unisys Corp., 410 Mass. 479, 482 (1991). Henkels, relying on the language of the contract letter, claims that B&M had a duty to indemnify it for the damages paid as a result of the Woodward claim.
Express Indemnification
Under Massachusetts law, a contract-based right to indemnification exists only if there is a binding contract between indemnitor and indemnitee in which such right is expressed or from which it can be fairly implied. Kelly v. Dimeo, Inc. Waterproofing Co., 31 Mass.App.Ct. 626, 628 (1991), rev. denied, 412 Mass. 1102, citing H.P. Hood & Sons, Inc. v. Ford Motor Co., 370 Mass. 69, 70 (1976). The intent of the parties controls interpretation of the contractual agreement as it allows for the rules of construction to give effect to the reasonable expectations of the parties. See Fall River Housing Auth. v. H.V. Collins Co., 414 Mass. 10, 13 (1992) (indemnity provisions to be construed fairly and reasonably to ascertain intent and effect purpose of same). Therefore, interpretation of the indemnification provision begins by giving its terms their “ordinary and plain meaning.” Often the presence of a requirement that the indemnifying party purchase insurance sheds light on the parties’ intention to indemnify and defend against claims. See Urban Inv. and Dey. Co. v. Turner Construction Co., 35 Mass.App.Ct. 100, 107-08 (1993). Parties, particularly sophisticated parties contracting at arms length, should not be allowed to *500 escape a provision for which they knowingly and voluntarily bargained. Id,
Implied Indemnification
Lacking an express indemnity provision, the court may recognize an indemnity implied by the circumstances only when there are special factors surrounding the contractual relationship which indicate an intention by one party to indemnify another in a particular situation. Fall River Housing Auth., 414 Mass. at 14, citing Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 38 (1983), and Araujo, 693 F.2d at 2-3. Massachusetts courts have found an implied right to contractual indemnity in certain situations so that an equitable resolution may be reached. In Monadnock Display Fireworks, Inc. v. Andover, the Supreme Judicial Court held that a contractual agreement by a town to provide police protection at a fireworks display implied an agreement by the town to Indemnify the fireworks company for damages paid to a spectator who came too near the display and was injured. 388 Mass. 153, 156 (1983). The Supreme Judicial Court also construed a lease agreement to make all outdoor repairs on a particular property to imply an obligation on the lessor to indemnify the lessee for damages arising from the failure to make the repairs. Great Atlantic & Pacific Tea Co. v. Yanofsky, 380 Mass. 326, 331-32 (1980). Cf. Araujo, supra at 2 (noting relationship between vendor and purchaser does not normally give rise to indemnification rights). Something in the contract, or something special in the relationship between the parties, must be present in order to imply an obligation to indemnify against liability or personal injury. Damages, however, must be fairly within the scope of foreseeability to permit inclusion under an implied right of indemnification. See Great Atlantic, supra at 333.
Common Law Indemnification
Indemnification may also be implied under common law principles. Indemnification generally is not permitted between negligent parties. It is allowed, however, when a party is exposed to liability because of the negligence of another. See Rathbun v. Western Massachusetts Elec. Co., 395 Mass. 361, 364 (1985). The exposed parfy, usually only passively negligent itself, is deemed to be constructively negligent and therefore vicariously or derivatively liable. Id. See also Araujo, 693 F.2d at 3. Common law indemnification seeks to shift the liability for damages onto the actively negligent party. See Rathbun, supra at 364. Where multiple parties are negligent, indemnification is inappropriate. Id.; see also Decker, 389 Mass. at 35.
Henkels and B&M
Henkels argues that the words in the letter are to be construed as agreement by B&M to indemnify Henkels because the words “protect from liability” are enough to give rise to a duty to indemnify. Henkels assert that, save for the restriction in the language of the agreement to third party claims involving vehicles leased between the two companies, there were no negotiations as to amount or level of coverage or any language of limitation, supporting the interpretation of B&M’s general duty to indemnify. B&M contends that the same language does not amount to a right to indemnity. It is their position that the plain terms of the letter, assuming that it constituted an agreement between the parties, related solely to allocating the burden of obtaining liability insurance on the vehicles leased by Henkels to B&M. As the word “indemnify” was not used, B&M insists that a duty to indemnify is broader than protecting from liability and was not intended by the parties. It is undisputed that the vehicles leased by B&M were insured under the terms of both Reliance, on behalf of B&M, and Liberty Mutual, on behalf of Henkels.
B&M further contends that the damages claimed by Henkels as a result of the accident are instead retroactive premiums that Henkels had to pay to its insurer, Liberty Mutual for the policy year that included the Woodward accident. B&M relies on Byrne v. City of Gloucester, 297 Mass. 156 (1937), to support its argument that the retroactive premium is a new and unexpected liability voluntarily assumed by Henkels and therefore, outside the scope of “liability arising from third party claims.” Byrne, however, is distinguishable from the present case on its facts. In that case, the Court held that the indemnity agreement between the plaintiff, who contracted to provide tunneling work, and the City did not require the plaintiff to bear the loss for damages sustained to private landowners property. The landowners’ rights of recovery against the city arose not as a result of the plaintiffs work but because of the city purchase of rights in their landthe city had the obligation of obtaining easements to the land before the work was doneand so was held not to fall within the scope of the indemnity agreement. Here, Henkels’ purchase of insurance from its own insurer with a self-insured retention was not a prerequisite to its contract with B&M for the leased vehicles and it is undisputed that the damages from the claim at issue, the Woodward claim, arose out of the use by B&M of one of Henkels’ leased vehicles.
Unlike the facts presented in Fall River, 414 Mass. at 14-15, where the Supreme Judicial Court found no express or implied right to indemnification in the parties’ contract, the provision at issue here is more specific. The agreement which gives evidence of intent by B&M to indemnify Henkels spells out that it is for the protection from liability involving third party claims on its leased vehicles. The relationship between Henkels and B&M was governed by a written contract containing provisions from which indemnity can be fairly implied. See Kelly, supra at 628. The indemnification runs to “protect! ] Henkels and McCoy, Inc. from liability arising from third party claims involving vehicles leased from Henkels and McCoy by Boston and Maine.” The plain language of the provision clearly *501 encompasses claims arising from incidents involving third parties. Because Henkels paid damages to the injured person when B&M expressly agreed to protect it from such damages, the indemnity provision accrued. Thus, B&M is required to indemnify Henkels for suits alleging negligence which fairly include B&M. Further, the contractual requirement that B&M obtain liability insurance supports the inference that B&M anticipated that it might be required to indemnify Henkels when it executed the contract. See Urban Investment and Development Co., 35 Mass.App.Ct. at 107-08. As further evidence of B&M’s contractual intent to indemnify Henkels, B&M accepted the contract when it signed the letter and issued a certificate of insurance, appearing to act in conformity with the terms and conditions of the agreement.
As the duty to indemnify is implied by the relationship and conduct of the parties, the Court need not reach the remaining tort-based theory of indemnification. Accordingly, on these facts, the language of the indemnity provision is consistent with imposing upon B&M an obligation to indemnify Henkels against liability for damages suffered because of B&M’s employee’s accident.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion for summary judgment is ALLOWED and that defendant’s motion for summary judgment is denied.

See Letter of May 27, 1986, attached as Exhibit C to defendant B&M’s Memorandum in Support of Summary Judgment.

At all relevant times, Roehrs was an agent for Reliance under an Agency Agreement.

See Memorandum and Order (Young, J.) dated March 28, 1994, USDCT CA. No. 90-10868Y.